# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT PIKEVILLE

| | |
|---|---|
| JOE ALLEN EVANS and LINDA EVANS, | CIVIL ACTION NO. 7:17-32-KKC |
| Plaintiffs, | |
| V. | **OPINION AND ORDER** |
| JOHN KIRK, et al., | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion to dismiss (DE 6) filed by defendant Martin County, Kentucky. For the following reasons, the motion will be GRANTED in part and DENIED in part.

## I. Background

Plaintiffs Joe and Linda Evans own a pawn shop located on Main Street in Inez, Kentucky. They allege that Martin County Deputy Sheriff Paul Witten initiated a criminal action against them and then arrested them, knowing there was no probable cause to believe they had committed any crime. They further allege that Martin County Sheriff John Kirk and Deputy Witten obtained a search warrant for their pawn shop knowing that information in the supporting affidavit was false and misleading.

The Evanses assert a claim under 18 U.S.C. § 1983 that Sheriff Kirk and Deputy Witten violated their Fourth Amendment rights. They also assert that

Sheriff Kirk and Deputy Witten violated the Kentucky Civil Rights Act, KRS 344.010 *et seq*.

The Evanses also assert these claims against Martin County, Kentucky and the Martin County Sheriff's Office (together, "the County"). As for the constitutional claim against the County, the Evanses assert that it is liable for failing to train and supervise the sheriff and deputy and that it is vicariously liable for the acts of the sheriff and deputy.

The County moves to dismiss the claims, arguing that the Evanses have failed to state any claim against it under Federal Rule of Civil Procedure 12(b)(6).

**II.   Analysis**

Counties can be liable under § 1983 only for certain actions and inactions. A county can be liable for "a custom, policy, or practice" that "was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). The "official or officials responsible for establishing final policy with respect to the subject matter in question" must make a "*deliberate choice* to follow a course of action." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)).

The only county policy that the Evanses allege in their complaint is an alleged failure to train the Sheriff's Department personnel. (DE 1-1, Complaint ¶ 11.) Likewise, in their response, the Evanses make clear that the county policy at issue is the County's alleged "systematic policy of failure to properly train its law enforcement personnel." (DE 11, Response at 3.)

A county may be liable for "failure to train its employees or to institute a policy to avoid the alleged harm where the need to act 'is so obvious, and the

2

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "The occasional negligent administration of an otherwise sound policy is not sufficient to impose municipal liability." *Id.*

Plaintiffs can establish the county's "need to act" in two ways. First, "the plaintiff can present evidence showing that the municipality possessed actual knowledge indicating a deficiency with the existing policy or training (or lack thereof), such as where there have been recurring constitutional violations." *Id.* Second, the plaintiff can show that "the need to act should have been 'plainly obvious to the [municipality's] policymakers, who, nevertheless, are 'deliberately indifferent' to the need.'" *Id.* at 648-49 (quoting *Canton*, 489 U.S. at 390 n. 10). "This arises 'in a narrow range of circumstances' where 'a violation of federal rights may be a *highly predictable* consequence of [the municipality's failure to act].'" *Id.* at 649 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). For example, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *Canton*, 489 U.S. at 390 n.10 (citation omitted).

The Evanses do not allege that there have been recurring constitutional violations by Sheriff Department personnel or that the County possessed actual knowledge of some deficiency in its training of the Sheriff's Department. Nevertheless, the Evanses do allege that the County "failed to have in place a training program for deputies such as Witten." (DE 1-1, Complaint, ¶ 10.) This can fairly be read to allege that the County did not have any training program in place

3

for its deputies at all. If the County deputies regularly effect arrests and obtain search warrants, then the need to train them in the Fourth Amendment could be viewed as so obvious that the failure to do so would be seen as a deliberate indifference to citizens' Fourth Amendment rights. Accordingly, the Court will not dismiss the failure-to-train claim at this point in this proceeding.

As to a failure-to-supervise claim, this is a "rare" claim. "Most agree that it exists and some allege they have seen it, but few actual specimens have been proved." *Amerson v. Waterford Twp.*, 562 F. App'x 484, 491 (6th Cir. 2014) (quoting *Mize v. Tedford*, 375 F. Appx. 497, 500 (6th Cir. 2010)). To sustain this claim, the plaintiff "must show that the city acted with 'deliberate indifference' to the risk of the constitutional violation and that its deliberate indifference was the 'moving force' behind the assault." *Id.* at 492 (quoting *Mize*, 375 Fed.Appx. at 500 (brackets omitted)).

The Evanses allege no facts supporting a failure-to-supervise claim against the County. They do not allege, for example, that there has been a pattern of constitutional violations by Sheriff Kirk or Deputy Witten, or that any such violations have gone undisciplined, or any circumstances that would indicate that the County was aware that these officers were prone to constitutional violations. *Amerson*, 562 F. App'x at 492. Accordingly, the Court will dismiss any failure-to-supervise claim against the County.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*

4

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id.* at 570.

As the Sixth Circuit has explained, there is a good reason for requiring a plaintiff to state more than the legal requirements for a cause of action in his complaint. It "prevents plaintiffs from launching a case into discovery – and from brandishing the threat of discovery during settlement negotiations – 'when there is no reasonable likelihood that [they] can construct a claim from the events related in the complaint.'" *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Twombly*, 550 U.S. at 558).

In their complaint, the Evanses also assert that the County is liable under the doctrine of respondeat superior and that the County is vicariously liable for the acts of the deputy and the sheriff. "While a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir.1997). Accordingly, these claims must be dismissed.

The Evanses assert a state-law claim against Martin County under the Kentucky Civil Rights Act ("KCRA"), KRS 344.010 *et seq.* (DE 1-1, complaint ¶¶ 3, 8, 13; DE 11, Response at 1.) The general purpose of the act is to protect individuals from discrimination on the basis of "familial status, race, color, religion, national origin, sex, age forty (40) and over, or because of the person's status as a qualified

individual with a disability." KRS § 344.020(1)(b). The KCRA is irrelevant to the Evanses' factual allegations. Accordingly, any claim under this statute will be dismissed.

The County also moves to dismiss any state tort claims against it. The Court does not construe the complaint to assert any such claims. To the extent that it does, those claims must also be dismissed. Under Kentucky law, the county is entitled to sovereign immunity for such claims. *Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004). "This immunity flows from the Commonwealth's inherent immunity by virtue of a Kentucky county's status as an arm or political subdivision of the Commonwealth." *Id*. The immunity extends to both intentional and unintentional torts. *Calvert Investments, Inc. v. Louisville & Jefferson County Metropolitan Sewer Dist.,* 805 S.W.2d 133, 139 (Ky.1991). The Evanses have presented no argument that the Kentucky General Assembly has waived the County's immunity in a way that would permit any state-law tort claims against it. Accordingly, the Court will dismiss any state-law tort claims against the County.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) the motion to dismiss (DE 6) filed by the County is GRANTED in part and DENIED in part as follows:

    a. The motion is GRANTED as to any claim that the County violated the Evanses' constitutional rights by failing to supervise Sheriff Kirk and Deputy Witten and any such claim is DISMISSED;

    b. The motion is GRANTED as to any state tort claim against the County and any claim under the Kentucky Civil Rights Act against the County and any such claims are DISMISSED;

    c. the motion is GRANTED as to any claim that the County is liable for Sheriff Kirk or Deputy Witten's actions under the under the doctrine of respondeat superior or vicarious liability and any such claim is DISMISSED; and

2) the motion is otherwise DENIED.

Dated December 7, 2017.

*Karen K. Caldwell*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY